T.C. Memo. 2016-214

UNITED STATES TAX COURT

MALCOLM D. ALEXANDER, Petitioner v.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 14921-13.                    Filed November 23, 2016.

Malcolm D. Alexander, pro se.

William J. Gregg, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

RUWE, Judge: Respondent determined a deficiency and additions to tax

with respect to petitioner's 2010 Federal income tax as follows:

| | | Additions to Tax | | |
| Year | Deficiency | Sec. 6651(a)(1) | Sec. 6651(a)(2) | Sec. 6654(a) |
| 2010 | $401,307 | $90,294.08 | $44,143.77 | $8,606.38 |

[*2] After concessions by the parties,[1] the issues remaining for decision are:
(1) whether petitioner is entitled to certain itemized deductions; (2) whether
petitioner is entitled to a dependency exemption deduction; (3) whether petitioner
is entitled to certain business expense deductions; and (4) whether petitioner is
liable for additions to tax under sections 6651(a)(1) and (2) and 6654.[2]

## FINDINGS OF FACT

Some of the facts have been stipulated and are so found. The stipulation of
facts, the first supplemental stipulation of facts, and the attached exhibits are
incorporated herein by this reference.

At the time the petition was filed, petitioner resided in Maryland.

During 2010 petitioner operated a multilevel network marketing business
(network marketing business). In order to promote his network marketing

---

[1]Respondent concedes that petitioner does not have cancellation of
indebtedness income of $100,665 or a capital gain of $975,000. Respondent also
concedes that petitioner is entitled to an itemized deduction for State sales tax
consistent with the applicable tables for a Maryland resident. Petitioner concedes
the adjustments for medical and healthcare payments received of $5,053, other
miscellaneous income of $1,500, and nonemployee compensation of $101,584.
The parties stipulate that petitioner's proper filing status for 2010 is married filing
separately.

[2]Unless otherwise indicated, all section references are to the Internal
Revenue Code (Code) in effect for the year in issue, and all Rule references are to
the Tax Court Rules of Practice and Procedure.

**[*3]** business petitioner rented hotel space and conducted weekly meetings, training, and presentations.

Petitioner owned two houses during the taxable year in issue. The first house was in Washington, D.C. (D.C. house),[3] and the second was his principal residence in Gaithersburg, Maryland (Gaithersburg house). In 2010 petitioner paid to American Star Financial, Inc. (American Star), mortgage interest of $57,220.83 in connection with the Gaithersburg house.

At a time not specified in the record petitioner purchased a Hummer vehicle which got "eight or nine miles to the gallon". Petitioner stated that he purchased the Hummer because "no one would follow a small little Honda around and believe that you were making money."

During the taxable year 2010 petitioner received from Zamzuu, Inc., nonemployee compensation of $101,584, miscellaneous other income of $1,500, and medical payments of $5,053. Petitioner also received other gross receipts income of $24,895 reportable on Schedule C, Profit or Loss From Business.

On or about April 15, 2011, petitioner requested an extension of time to file his 2010 Federal income tax return until October 15, 2011. Petitioner did not file a Federal income tax return for 2010. For the taxable year 2010 petitioner did not

---

[3]On July 27, 1995, petitioner purchased the D.C. house for $115,000.

**[*4]** have any Federal income tax withheld and did not make any estimated tax payments.

On March 29, 2013, respondent mailed to petitioner a notice of deficiency for 2010. Petitioner timely filed a petition with this Court on July 1, 2013.

OPINION

The Commissioner's determinations in a notice of deficiency are generally presumed correct, and the taxpayer bears the burden of proving that the determinations are in error. See Rule 142(a); Welch v. Helvering, 290 U.S. 111, 115 (1933). Deductions are a matter of legislative grace, and the taxpayer bears the burden of proving entitlement to any deduction claimed. Rule 142(a); INDOPCO, Inc. v. Commissioner, 503 U.S. 79, 84 (1992); New Colonial Ice Co. v. Helvering, 292 U.S. 435, 440 (1934). Section 6001 requires the taxpayer to maintain records sufficient to establish the amount of each deduction claimed. See also sec. 1.6001-1(a), Income Tax Regs.

A. Itemized Deductions

1. Mortgage Interest Deduction

Section 163(h)(1) generally disallows a deduction for personal interest. An exception to this rule is qualified residence interest. Sec. 163(h)(2)(D). Qualified residence interest includes amounts paid or accrued during the taxable year on

[*5] acquisition indebtedness. Sec. 163(h)(3)(A). Acquisition indebtedness means any indebtedness that is incurred in acquiring, constructing, or substantially improving any qualified residence of the taxpayer and is secured by the residence. Sec. 163(h)(3)(B)(i). A qualified residence includes the principal residence of the taxpayer. Sec. 163(h)(4)(A).

Petitioner argues that he is entitled to a $57,220.83 deduction on Schedule A, Itemized Deductions, for home mortgage interest paid in 2010 pertaining to the Gaithersburg house. At trial petitioner testified credibly that he paid $57,220.83 in mortgage interest to American Star in 2010. American Star issued to petitioner a Form 1098, Mortgage Interest Statement, for the taxable year in issue. The Form 1098, which respondent subpoenaed from American Star, states that American Star received $57,220.83 of mortgage interest from petitioner in 2010 in connection with the mortgage on the Gaithersburg house.[4]

American Star issued to petitioner a Form 1099-C, Cancellation of Debt, for 2010. The Form 1099-C reports that American Star canceled $100,665.25 of debt relating to the Gaithersburg house, which includes $52,746.25 of interest. Respondent's argument appears to be that American Star canceled petitioner's

---

[4]Respondent claims that this Form 1098 is not in his records. However, the Form 1098 that was put into evidence was obtained by respondent from American Star pursuant to subpoena and is consistent with petitioner's testimony.

[*6] mortgage interest for 2010 and therefore petitioner did not pay the interest reported as received by American Star on the Form 1098. We are not persuaded by respondent's argument for several reasons. First, respondent presented no evidence that the reported cancellation of indebtedness was connected to the interest payments American Star reported having received. Respondent does not explain or offer evidence regarding whether the interest reported as received on the Form 1098 is in any way connected to the amount of interest reported as canceled on the Form 1099-C. Second, the amount of interest reported as canceled on the Form 1099-C is not the same as the amount of interest reported as received by American Star on the Form 1098. The Forms 1098 and 1099-C that are in evidence were obtained from American Star by respondent's subpoena. There is nothing in the record to indicate that respondent asked American Star about any relationship between the interest received and the cancellation of indebtedness. Furthermore, respondent conceded that petitioner is not liable for cancellation of indebtedness income in the amount reported on the Form 1099-C, $100,665.25. Accordingly, we hold that petitioner is entitled to a $57,220.83 mortgage interest deduction.[5]

---

[5]Petitioner testified that the Gaithersburg house cost $1,376,323 and the land cost $247,738. Respondent makes no argument that a portion of the interest

(continued...)

**[\*7]** 2. <u>Medical and Dental Expenses</u>

Section 213(a) allows a deduction for expenses paid during the taxable year, not compensated for by insurance or otherwise, for medical care of the taxpayer, a spouse, or a dependent to the extent that such expenses exceed 7.5 percent of the taxpayer's adjusted gross income. The term "medical care" includes amounts paid for "the diagnosis, cure, mitigation, treatment, or prevention of disease, or for the purpose of affecting any structure or function of the body, * * * for transportation primarily for and essential to medical care", or for insurance. Sec. 213(d)(1)(A), (B), (D). However, amounts paid during the taxable year for medicine or a drug are taken into account only if the medicine or drug is a prescribed drug or insulin. Sec. 213(b). The term "prescribed drug" means a drug or biological which requires a physician's prescription for its use by an individual. Sec. 213(d)(3).

Petitioner contends that he is entitled to an itemized deduction for medical and dental expenses. In support of this claimed deduction petitioner offered into evidence two three-ring "tax binders", containing a compilation of receipts, invoices, and handwritten ledgers and notations. As it relates to medical and dental expenses, one of the ledgers lists vague vendor categories, such as "Disney

---

[5](...continued)
deduction is limited by sec. 163(h)(3)(B)(ii).

[*8] Parks", "Dairy", "Doctors" and "Shoppers", along with corresponding dates and amounts. Many of the receipts included with the ledgers appear to show purchases of over-the-counter items, such as ibuprofen, Pepcid, Dayquil, Nyquil, lip balm, and diapers. Among the numerous receipts are two invoices--one from Riverside Medical Associates for $295.55 and the other from the Training Room for $75--but these invoices list only balances due and do not document that payment was made. Petitioner's ledgers, receipts, and invoices lack one or more of the following: (1) the product/service purchased; (2) the specific medical purpose underlying the expense; (3) the name and address of the payee; or (4) the name of the payor or patient. See Renner v. Commissioner, T.C. Memo. 2015-102, at *19. In addition, many of the receipts appear to be for purchases of over-the-counter (i.e., nonprescription) medication. See sec. 213(d)(3). Furthermore, petitioner did not offer any evidence showing that he was not reimbursed for the expenses. See sec. 213(a). On the basis of this record, we hold that petitioner is not entitled to an itemized deduction for medical and dental expenses.

B. Dependency Exemption Deduction

Section 151(a) and (c) provides taxpayers with an annual deduction for each "dependent". The Code defines a "dependent" as either a "qualifying child" or a "qualifying relative". Sec. 152(a)(1) and (2). This requirement is disjunctive, and

**[*9]** therefore a taxpayer can appropriately claim an individual as a dependent by satisfying the criteria for either a qualifying child or a qualifying relative. See, e.g., Watley v. Commissioner, T.C. Memo. 2012-240, at *5-*7.

In order for an individual to be a qualifying child of a taxpayer, section 152(c) requires that the individual: (1) bear a specified relationship to the taxpayer; (2) share the same abode as the taxpayer for more than one-half of the taxable year; (3) meet specified age requirements; and (4) not have provided over one-half of his or her own support for the taxable year. Sec. 152(c)(1)(A)-(E). In order for an individual to be a qualifying relative of a taxpayer, section 152(d) requires that the individual: (1) bear a specified relationship to the taxpayer; (2) have gross income for the taxable year less than the exemption amount; (3) receive over half of his or her support from the taxpayer for the taxable year; and (4) not be a qualifying child of the taxpayer or any other taxpayer for the taxable year.

Petitioner argues that he is entitled to a dependency exemption deduction for his 10-year-old stepson. Petitioner did not offer any testimony or other evidence concerning the abode of his stepson for the taxable year in issue, the amount of support (if any) provided by or to his stepson for the taxable year in issue, or his stepson's gross income for the taxable year in issue. Accordingly,

[*10] petitioner has failed to demonstrate that his stepson is his qualifying child or qualifying relative for the year in issue and, thus, is not entitled to a dependency exemption deduction for his stepson.

C.  Schedule C Expenses

Section 162(a) allows as a deduction "all the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business".  See Boyd v. Commissioner, 122 T.C. 305, 313 (2004).  A trade or business expense is ordinary for purposes of section 162 if it is normal or customary within a particular trade, business, or industry and is necessary if it is appropriate and helpful for the development of the business.  Commissioner v. Heininger, 320 U.S. 467, 471-472 (1943); Deputy v. du Pont, 308 U.S. 488, 495 (1940).  In contrast, section 262(a) disallows deductions for personal, living, or family expenses.

If the taxpayer establishes that an expense is deductible, but is unable to substantiate the precise amount, we may estimate the amount, bearing heavily against the taxpayer whose inexactitude is of his or her own making.  See Cohan v. Commissioner, 39 F.2d 540, 543-544 (2d Cir. 1930).  The taxpayer must present sufficient evidence for the Court to form an estimate because without such a basis, any allowance would amount to unguided largesse.  Williams v. United States, 245

**[*11]** F.2d 559, 560-561 (5th Cir. 1957); <u>Vanicek v. Commissioner</u>, 85 T.C. 731, 742-743 (1985).

    1. <u>Home Office</u>

Section 280A(a) provides as a general rule that no deduction otherwise allowable to an individual "shall be allowed with respect to the use of a dwelling unit which is used by the taxpayer during the taxable year as a residence." The term "dwelling unit" is defined as "a house, apartment, condominium, mobile home, boat, or similar property, and all structures or other property appurtenant to such dwelling unit." Sec. 280A(f)(1)(A). However, section 280A(c) provides an exception to the general disallowance of subsection (a). In pertinent part, section 280A(c)(1) provides:

> SEC. 280A(c). Exceptions for Certain Business or Rental Use; Limitation on Deductions for Such Use.--
>
> > (1) Certain business use.--Subsection (a) shall not apply to any item to the extent such item is allocable to a portion of the dwelling unit which is exclusively used on a regular basis--
> >
> > > (A) as the principal place of business for any trade or business of the taxpayer,
> > >
> > > (B) as a place of business which is used by patients, clients, or customers in meeting or dealing with the taxpayer in the normal course of his trade or business, or

**[*12]**                               (C) in the case of a separate structure which
is not attached to the dwelling unit, in connection
with the taxpayer's trade or business.

For an expense related to a dwelling unit to fit within this exception, some portion

of the dwelling unit must be used regularly and exclusively for the taxpayer's trade

or business.  See Scully v. Commissioner, T.C. Memo. 2013-229, at *21.

Petitioner argues that he purchased the Gaithersburg house "primarily for

the business, and * * * used many spaces in it just strictly for the business", and is

entitled to a home office expense deduction for the use of 27.27% of the house.

According to petitioner, he used three rooms of the Gaithersburg house--a first-

floor office, a second-floor office, and a "presentation room"--regularly and

exclusively for his network marketing business.  We are not required to accept

petitioner's vague and otherwise unsubstantiated testimony.  See Tokarski v.

Commissioner, 87 T.C. 74, 77 (1986).

To substantiate that he used 3 of 11 rooms (i.e., 27.27%) of the

Gaithersburg house regularly and exclusively for business purposes, petitioner

offered into evidence copies of photographs depicting rooms, folding chairs, and

social gatherings.  However, the copies of photographs do not establish whether

the rooms were used regularly and exclusively for petitioner's network marketing

business.  See sec. 280A(c).  Even if petitioner established that he used certain

**[\*13]** rooms regularly and exclusively for business purposes, he provided no testimony or documentation concerning the size of the house and rooms which would allow us to properly allocate costs.  See Galbraith v. Commissioner, T.C. Memo. 2016-168, at \*12.  On the basis of this record, we find that petitioner has failed to demonstrate or prove that any portion of the Gaithersburg house was regularly and exclusively used for business purposes in 2010.  Accordingly, we sustain respondent's disallowance of a home office expense deduction.

Petitioner also argues that he is entitled to Schedule C deductions for expenses associated with the business use of the Gaithersburg house, such as utilities, real estate taxes, insurance, and pool expenses.  Because we have determined that petitioner is not entitled to a deduction for the business use of the Gaithersburg house, it follows that he is not entitled to Schedule C deductions for utilities, real estate taxes, insurance, and pool expenses.

2. D.C. House

Petitioner argues that he is entitled to a $6,200 deduction on Schedule C for mortgage interest related to a second mortgage on the D.C. house.[6]  Petitioner argues that the lender was Richard Clark.  Mr. Clark did not issue petitioner a

---

[6]On brief respondent concedes that petitioner is entitled to a $5,235 deduction on Schedule A, Itemized Deductions, for mortgage interest paid to Bank of America related to the D.C. house.

**[*14]** Form 1098 for the taxable year 2010. Petitioner also argues that he is entitled to a Schedule C utilities expense deduction and a depreciation deduction pertaining to the D.C. house.

Petitioner offered into evidence copies of three checks paid to Mr. Clark or his wife, Kim Clark, totaling $4,700 and what appears to be a portion of email correspondence discussing the Gaithersburg house. Two of the checks offered by petitioner contain handwritten notations referencing the Gaithersburg house, and the notation on the third check is illegible. The portion of email correspondence is similarly unhelpful as it does not clarify what interest (if any) was paid, to whom the interest was paid, or what property the alleged interest relates to. Petitioner has provided no credible evidence establishing that the D.C. house accrued mortgage interest in 2010 payable to Mr. Clark or that he paid this interest in 2010. Accordingly, petitioner is not entitled to a Schedule C interest deduction pertaining to a second mortgage on the D.C. house.

Other than vague and self-serving testimony petitioner did not offer credible evidence establishing that any portion of the D.C. house was used regularly and exclusively for his network marketing business.[7] It follows logically that he is not

---

[7]We note that petitioner used the address of the D.C. house on the petition as his address of record.

[*15] entitled to Schedule C expense deductions for utilities and depreciation with respect to the D.C. house.

### 3. Hotel Room Rentals

Petitioner contends that he is entitled to a Schedule C deduction of $4,742.07 for renting hotel meeting rooms in connection with his network marketing business. To substantiate this expense petitioner offered into evidence nine invoices from the Hilton in Rockville, Maryland, totaling $2,985.12, an invoice from the Holiday Inn in College Park, Maryland, for $300, and an invoice from the Quincy in Washington, D.C., for $184.08. Petitioner also offered as evidence a printout from a Wachovia custom business checking account. On brief, respondent concedes that petitioner is entitled to a deduction of $3,285.12, which is the aggregate amount for room rentals at the Hilton and Holiday Inn.

Petitioner has not substantiated that the hotel room rental expense on the $184.08[8] invoice from the Quincy was incurred or paid in connection with his network marketing business. Neither petitioner's name nor the name of his network marketing business is listed on the invoice from the Quincy, and there is no explanation on the invoice as to the business purpose of the rental. The

---

[8]Petitioner claims an additional hotel rental expense deduction of $1,272.87, and it is unclear from the record to what this additional expense relates.

[*16] Wachovia custom business checking account printout is equally unhelpful for substantiation purposes as it does not include the name of the account holder or provide details of the transactions listed on the account. Accordingly, we hold that petitioner is entitled to only a $3,285.12 Schedule C deduction for rent paid to the Hilton and the Holiday Inn in connection with the operation of his network marketing business.

4. Wages

Petitioner argues that he paid his 10-year-old stepson cash wages of $6,315 in 2010 and that this amount is deductible on Schedule C as a labor expense. Petitioner testified that he paid his stepson to perform work for the network marketing business, such as taking out the trash, vacuuming, setting up chairs, and cleaning the pool.

To substantiate the payment of cash wages to his stepson, petitioner offered a handwritten ledger with dates and amounts that was prepared by an individual with the initials "PW" on "8-29/14" and a computer printout of tasks performed by his stepson. We are not convinced that the handwritten ledger or the printed timesheet was contemporaneously prepared or that the documentation provides a credible assessment of work performed by petitioner's stepson. In addition, some of the tasks for which petitioner purportedly paid his stepson do not appear to be

[*17] ordinary and necessary to petitioner's network marketing business, such as: "Help with new baby Mason", "Malcolm 11 Birthday", "Helping Kids", and "paint". Furthermore, petitioner did not issue his stepson a Form 1099-MISC, Miscellaneous Income, or a Form W-2, Wage and Tax Statement, for 2010 reporting the cash wages he purportedly paid. Thus, we cannot conclude that petitioner's stepson performed work for petitioner's network marketing business in 2010 or that petitioner actually paid his stepson for this work.

5. Car and Truck Expenses

Section 274 overrides the Cohan rule with regard to certain expenses. See Sanford v. Commissioner, 50 T.C. 823, 828 (1968), aff'd per curiam, 412 F.2d 201 (2d Cir. 1969); sec. 1.274-5T(a), Temporary Income Tax Regs., 50 Fed. Reg. 46014 (Nov. 6, 1985). Under section 274(d), the taxpayer must meet stricter substantiation requirements to be allowed a deduction under section 162. The heightened substantiation requirements of section 274(d) apply to: (1) any traveling expense, including meals and lodging away from home; (2) any item with respect to an activity in the nature of entertainment, amusement, or recreation; (3) an expense for gifts; or (4) the use of "listed property" as defined in section 280F(d)(4), including any passenger automobiles. To deduct these expenses, the taxpayer must substantiate by adequate records or by sufficient

**[*18]** evidence corroborating the taxpayer's own statement: (1) the amount of the expense; (2) the time and place of the expense; and (3) the business purpose of the expense. Sec. 274(d); see also Oswandel v. Commissioner, T.C. Memo. 2007-183, 2007 Tax Ct. Memo LEXIS 185, at *7. Even if such an expense would otherwise be deductible, section 274 may still preclude a deduction if the taxpayer does not present sufficient substantiation. Sec. 1.274-5T(a), Temporary Income Tax Regs., supra.

Substantiation by adequate records requires the taxpayer to maintain an account book, a diary, a log, a statement of expense, trip sheets, or a similar record prepared contemporaneously with the use or expenditure and documentary evidence (e.g., receipts or bills) of certain expenditures. See sec. 1.274-5(c)(2)(iii), Income Tax Regs.; sec. 1.274-5T(c)(2), Temporary Income Tax Regs., 50 Fed. Reg. 46017 (Nov. 6, 1985). A log that is kept on a weekly basis is considered contemporaneous for this purpose. See sec. 1.274-5T(c)(2)(ii)(A), Temporary Income Tax Regs., 50 Fed. Reg. 46017-46018 (Nov. 6, 1985). The level of detail required for substantiating by adequate records the business use of listed property depends on the facts and circumstances of such use. See id. subdiv. (ii)(C), 50 Fed. Reg. 46018-46019.

[*19] Petitioner argues that he is entitled to a deduction on Schedule C for car and truck expenses for 2010. Petitioner offered into evidence numerous items, including: (1) a 2010 auto expense worksheet for his Hummer vehicle claiming actual expenses of $13,112; (2) handwritten ledgers for gas, car repairs, car insurance, and tolls; (3) a partial Wachovia custom business checking account printout; and (4) receipts for gas, oil, auto parts, parking, and tolls. Petitioner's claimed car and truck expenses are subject to the heightened substantiation requirements of section 274(d). See secs. 274(d)(4), 280F(d)(4)(A)(i).

We find that petitioner has failed to substantiate that he incurred car and truck expenses in connection with his network marketing business. Petitioner's 2010 auto expense worksheet estimates that 87% of his Hummer vehicle use was for business. Petitioner's testimony was vague as to the business use of the Hummer vehicle, and he stated only that "no one would follow a small little Honda around and believe that you were making money." Likewise, petitioner's handwritten ledgers and receipts show vendor names (e.g., Chevron, Exxon, and Shell), dates, and amounts, but they do not include any information about mileage driven, names/addresses of clients, or the business purpose of the trips. Accordingly, petitioner has failed to substantiate that he incurred car and truck expenses for the year in issue as required under section 274(d).

**[*20]** 6. <u>Meals and Entertainment</u>

Petitioner argues that he is entitled to a deduction for meals and entertainment expenses incurred in the course of meeting and acquiring new customers for his network marketing business. Petitioner's claimed expenses for meals and entertainment are subject to the heightened substantiation requirements of section 274(d). <u>See</u> sec. 274(d)(2). With respect to expenditures for meals, a taxpayer must maintain records sufficient to establish: (1) the amount paid for each meal; (2) the date of the meal; (3) the address of the dining establishment; (4) the business purpose of the meal, including the nature of any business discussion; and (5) the business relationship of the person entertained by the taxpayer. <u>See</u> sec. 274(d); <u>Stroff v. Commissioner</u>, T.C. Memo. 2011-80, 2011 Tax Ct. Memo LEXIS 79, at *4-*5.

Petitioner offered into evidence a handwritten ledger prepared by an individual with the initials "PW" on "8/31/14" which listed vendor names (e.g., Pizza Hut, McDonald's, Roy Rogers, Papa Johns, and Starbucks), dates, and amounts. We find the handwritten ledger to be insufficient substantiation under section 274(d) because there are no explanations regarding the business purpose of the meals or petitioner's business relationship to the person(s) with whom he

[*21] allegedly dined.  We hold that petitioner has not substantiated his entitlement to meals and entertainment expense deductions as required by section 274(d).

D.  Additions to Tax

Respondent determined that petitioner is liable for additions to tax pursuant to sections 6651(a)(1) and (2) and 6654(a).  Respondent has the burden of production with respect to these additions to tax.  See sec. 7491(c).  Once respondent satisfies this burden, petitioner has the burden of proof with respect to exculpatory factors such as reasonable cause.  See Higbee v. Commissioner, 116 T.C. 438, 446-447 (2001).

1.  Section 6651(a)(1)

Section 6651(a)(1) imposes an addition to tax when a taxpayer fails to timely file a return unless the taxpayer establishes that the failure was due to reasonable cause and not due to willful neglect.  The addition to tax is equal to 5% of the amount required to be shown as tax on the delinquent return for each month or fraction thereof during which the return remains delinquent, up to a maximum addition of 25% for returns more than four months delinquent.  Id.

Petitioner was required to but did not file a Federal income tax return for 2010.  Respondent has therefore met his burden of production with respect to the

**[\*22]** addition to tax under section 6651(a)(1).  Petitioner did not provide any argument or evidence to establish that his failure to file was due to reasonable cause.  Furthermore, because petitioner did not challenge the addition to tax under section 6651(a)(1) in his petition, we deem this issue conceded.  See Rule 34(b)(4) ("Any issue not raised in the assignments of error shall be deemed to be conceded.").  Accordingly, we hold that petitioner is liable for the addition to tax under section 6651(a)(1).

2.  Section 6651(a)(2)

Petitioner made no payments regarding his 2010 income tax.  Respondent determined that petitioner is liable for an addition to tax under section 6651(a)(2) for failure to timely pay the amount of tax shown on a return.  Section 6651(a)(2) imposes an addition to tax unless the taxpayer establishes that the failure was due to reasonable cause and not due to willful neglect.  The addition is calculated as 0.5% of the amount shown as tax on the return but not paid, with an additional 0.5% for each month or fraction thereof during which the failure to pay continues, up to a maximum of 25%.[9]  Id.

---

[9]The amount of the addition to tax under sec. 6651(a)(2) reduces the amount of the addition to tax under sec. 6651(a)(1) for any month for which an addition to tax applies under both paragraphs.  Sec. 6651(c)(1).

**[\*23]** A substitute for return made by the Secretary pursuant to section 6020(b) is treated as "the return filed by the taxpayer for purposes of determining the amount of the addition" under section 6651(a)(2). Sec. 6651(g)(2). The parties stipulate: "For petitioner's taxable year 2010, respondent followed the Internal Revenue Code section 6020(b) substitute for return procedures." Moreover, petitioner made no argument that the section 6651(a)(2) addition to tax should not be applied, and his petition does not contain specific allegations challenging respondent's determination that he is liable for it. See Rule 34(b)(4) ("Any issue not raised in the assignments of error shall be deemed to be conceded."). "[W]here a petition fails to state a claim in respect of penalties, additions to tax, and/or additional amounts, the Commissioner incurs no obligation to produce evidence in support of such determinations pursuant to section 7491(c)." Funk v. Commissioner, 123 T.C. 213, 218 (2004); see also Swain v. Commissioner, 118 T.C. 358, 365 (2002). Accordingly, we hold that petitioner is liable for the addition to tax under section 6651(a)(2).

　　3. Section 6654

Respondent determined that petitioner is liable for an addition to tax for failure to pay estimated tax under section 6654 for 2010. Section 6654(a) imposes an addition to tax on an underpayment of estimated income tax unless one of the

**[\*24]** exceptions in section 6654(e) applies. A taxpayer has an obligation to pay estimated tax only if he or she has a "required annual payment". Wheeler v. Commissioner, 127 T.C. 200, 212 (2006), aff'd, 521 F.3d 1289 (10th Cir. 2008). The required annual payment is equal to the lesser of: (1) 90% of the tax shown on the taxpayer's return for that year (or, if no return is filed, 90% of her tax for such year), see sec. 6654(d)(1)(B)(i), or (2) if the individual filed a return for the immediately preceding taxable year, 100% of the tax shown on that return, see sec. 6654(d)(1)(B)(ii). The addition to tax is mandatory regardless of extenuating circumstances or reasonable cause. See Dodge v. Commissioner, 96 T.C. 172, 183 (1991), aff'd in part, rev'd in part, 981 F.2d 350 (8th Cir. 1992); Grosshandler v. Commissioner, 75 T.C. 1, 21 (1980).

Petitioner failed to file a Federal income tax return for 2010. Petitioner did not offer any evidence that he paid estimated tax for 2010 and stipulated that he did not have any Federal income tax withheld or make estimated tax payments. Moreover, because petitioner did not challenge the section 6654 addition to tax in his petition, we deem this issue conceded. See Rule 34(b)(4); Funk v. Commissioner, 123 T.C. at 218; Swain v. Commissioner, 118 T.C. at 365.

[*25] Accordingly, we sustain respondent's determination regarding the section 6654 addition to tax.[10]

In reaching our decision, we have considered all arguments made by the parties, and to the extent not mentioned or addressed, they are irrelevant or without merit.

To reflect the foregoing,

<u>Decision will be entered</u>

<u>under Rule 155</u>.

---

[10]The additions to tax under secs. 6651(a)(1) and (2) and 6654 will be determined in a Rule 155 computation.